RENDERED: NOVEMBER 20, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1384-MR

BETTY BOWLES                                                                APPELLANT

v.      APPEAL FROM DAVIESS CIRCUIT COURT
HONORABLE JAY A. WETHINGTON, JUDGE
ACTION NO. 11-CI-01671

CITY UTILITY COMMISSION OF THE
CITY OF OWENSBORO, KENTUCKY
D/B/A OWENSBORO MUNICIPAL UTILITIES; ATMOS
ENERGY CORPORATION; BELLSOUTH
TELECOMMUNICATIONS, LLC; AND TIME WARNER
CABLE INFORMATION SERVICES (KENTUCKY), LLC        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, JONES, AND KRAMER, JUDGES.

CALDWELL, JUDGE: Betty Bowles appeals from the Daviess Circuit Court

order granting summary judgment to Appellees City Utility Commission of the

City of Owensboro, Kentucky d/b/a Owensboro Municipal Utilities; Atmos

Energy Corporation; BellSouth Telecommunications, LLC; and Time Warner Cable Information Services (Kentucky), LLC (hereinafter referred to as "the utilities"). Having reviewed the record and the arguments of the parties, we affirm the decision of the circuit court.

## FACTS

In 2011, Appellant Betty Bowles (Bowles) bought a home in the Fiddlesticks Subdivision in Owensboro, Kentucky, from the developer of the subdivision. Shortly after her purchase, Bowles engaged a contractor to construct a brick fence to encompass a portion of the rear of the home. The home was situated at the end of a block and on a lot which was triangular in shape. A neighbor noticed the construction and was concerned that the brick fence might be encroaching on a public utility easement.

The recorded plat of the development clearly shows that adjacent to the streets running on two sides of Bowles' property is a small strip of grass, then sidewalk, then another strip of grass, then the subject public utility easement. The brick fence Bowles was having erected on her property was situated within the ten-foot-wide easement. The easement was reserved for underground utilities and was shared by various public utility companies including the electric company, telecom company, and cable television provider, among others.

When advised by the neighbor that there was construction occurring at the Bowles' property that might violate the public utility easement, an employee of Owensboro Municipal Utilities (OMU) went to the subdivision and noted a brick foundation and wall were in construction and appeared to encompass the public utility easement. Bowles saw the employee noting the construction and approached him. He informed her that she could not encroach upon the easement and that the construction would have to stop. Bowles indicated she would not interrupt the construction and intended to proceed with the erection of the brick fence.

Counsel for OMU then sent notice to counsel for Bowles and advised that the construction should be halted while the parties resolved the matter. The matter was not resolved, Bowles completed the construction of the brick fence, and the utilities filed a complaint in Daviess Circuit Court in late 2011 seeking a permanent injunction requiring the removal of the brick fence.[1]

The circuit court entered an order granting the utilities' motion for summary judgment and issuing a permanent injunction. The circuit court reasoned

---

[1] The complaint contained a second count concerning a zoning violation which was the subject of a separate litigation and appeal, wherein the zoning law was found to be unconstitutional. *See Owensboro Metro. Bd. of Adj. v. Bowles*, No. 2013-CA-001256-MR, 2014 WL 5786540 (Ky. App. Nov. 7, 2014), wherein a panel of this Court determined that the circuit court had properly found the zoning law "constituted an unlawful delegation of authority to the utilities that use public utility easements[.]" *Id.* at *1. The circuit court had held that the proper solution lay at common law and this Court agreed. *Id.* at *2. Thus, the matter was remanded, and it is from that remand that this action concerning a common law analysis now arises.

that as each side had filed motions for summary judgment, there clearly was no dispute of material fact. The court noted that the PUE ("public utility easement") was ten feet wide, noted on the subdivision plat, and was reserved for the use of all utilities which would benefit all property owners in the neighborhood by allowing utility providers to maintain and service utility lines.

The circuit court pointed out that the utility providers needed not only access to the lines themselves, but also needed sufficient access to use machinery which would allow them to access the buried lines, should the need to service or upgrade the utility lines occur. As the brick fence restricted access to the easement from the right of way, it was unreasonable as it "imposes a significant burden on those utilities' access to the easement, not only impeding service to Bowles' house but service to other residences in the subdivision." Further, the circuit court found it unreasonable for Bowles to expect the utilities to expend additional time and resources to deconstruct her structure to reach their lines, should the need arise, and was unpersuaded by Bowles' offer to hold harmless any utility company which would have to tear down the brick structure. It was unreasonable, also, for Bowles to have persisted in constructing the fence after being told that it was violative of the easement, the circuit court found.

Having found Bowles to have unreasonably encroached upon the easement, the circuit court granted the utilities' motion for summary judgment and

entered a permanent injunction ordering Bowles to remove the structure from the public utility easement within sixty (60) days of the entry of the order. The circuit court later amended the order to provide for a stay of the injunction, if an injunction bond of $15,000 was tendered and should an appeal be filed and, unsurprisingly, Bowles appealed. We affirm.

## STANDARD OF REVIEW

Appellate courts employ a *de novo* standard of review on questions concerning the propriety of a trial court's ruling on a motion for summary judgment. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019). In the seminal case of *Steelvest, Inc. v. Scansteel Service Center, Inc*., the Kentucky Supreme Court explained that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." 807 S.W.2d 476, 480 (Ky. 1991). In reviewing such a motion, the trial court must view the facts "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor," and in so doing must examine the proof to ensure that no real issue of material fact exists. *Id.*

As the circuit court observed, when both parties file motions seeking summary judgment, the question of whether there is a genuine issue of material

fact in dispute is usually answered in the negative; both parties have already insisted in their motions that there exists no genuine issue of material fact and insist the question to be decided is merely a question of the application of law to these undisputed facts. Here, there clearly is no dispute of fact; the only dispute was whether, as a matter of law, Bowles' actions were reasonable. We find they clearly were not.

## ANALYSIS

Preliminarily, although the owner of a servient estate has the right of reasonable use of that portion of their property encompassed by the easement, such right is subject to the rights of the holder of the dominant estate, and "the owner cannot unreasonably interfere with the rights of the holder of the easement." *Com., Dep't of Fish & Wildlife Res. v. Garner*, 896 S.W.2d 10, 14 (Ky. 1995). The question of law presented by this case is whether erection of a brick fence of substance upon the public utility easement was a reasonable use by the servient estate. It was not.

Bowles has insisted that her use was reasonable because it would be unlikely that the utilities would have reason to access their lines for many years. She also argued the lines buried were not high voltage, there was a gate in the brick fence that the utilities could use should they need to access the easement, and she

had offered permission to the utilities to dismantle the structure should the need ever arise.

The circuit court considered all of these arguments and found them unpersuasive, holding that Bowles' action of continuing the construction after being notified that her plans were an unreasonable encroachment on the easement was, in fact, not a reasonable reaction. It should have been of no surprise to Bowles that there was a public utility easement running along the boundaries of her property as such was clearly delineated on the subdivision plat. Her actions of ignoring warnings and proceeding should not allow her to now argue that the dominant estate should accommodate her encroachment on their reasonable use of their easement. "[T]he easement grantor may not interfere with the easement holder's use of the easement." *Sawyers v. Beller*, 384 S.W.3d 107, 111 (Ky. 2012) (citing *Garner*, 896 S.W.2d at 13-14).

We hold that the brick structure restricts the utilities' use of the easement. *See Westphal v. Kentucky Utilities Co.*, 343 S.W.2d 367, 369 (Ky. 1960) ("It is certain the Company's interest in the land does not deprive defendants of the right to use their property in a proper manner as they see fit, provided they do not interfere with the *reasonable* use or enjoyment of the easement."). The placement of the utility easement, adjacent to the sidewalks and the streets, is not random; public utilities might have need of heavy equipment to make repairs and

access the buried lines, and the easement is easily accessed by the nearby streets and sidewalks, where such equipment could be parked. The presence of a brick fence unreasonably interferes with the utilities' ability to easily access the utility lines contained within the utility easement.

Requiring the utilities to rely upon Bowles' promise to recompense them should they need to remove the obstruction is not reasonable, and as the Appellees point out, is an admission that the structure is an obstruction to the use of the easement and belies the unreasonableness of her use. *See Cent. Ky. Nat. Gas Co. v. Huls,* 241 S.W.2d 986, 988 (Ky. 1951).[2]

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's order granting summary judgment for Appellees and the issuance of the permanent injunction requiring Bowles to remove the structure from within the public utility easement.

KRAMER, JUDGE, CONCURS.

JONES, JUDGE, CONCURS IN RESULT ONLY.

---

[2] "We call attention to the statement of appellees that they would either raise or move the building upon request that appellant might make proper inspection or properly patrol the line. This is an admission that there is a burden thrust upon the easement and a violation of the rights conferred by that easement even though it appears to appellees to be so minor as only to require a request to remove the building." *Cent. Ky. Nat. Gas Co. v. Huls*, 241 S.W.2d 986, 988 (Ky. 1951).

BRIEFS FOR APPELLANT:

Keith Moorman
Warren J. Hoffmann
Jason Halligan
Lexington, Kentucky

R. Michael Sullivan
Jesse Mountjoy
Owensboro, Kentucky

BRIEF FOR APPELLEES:

Counsel for City Utility Commission
of the City of Owensboro, Kentucky
d/b/a Owensboro Municipal Utilities:
Patrick D. Pace
Stephen C. Pace
Owensboro, Kentucky

Counsel for Atmos Energy
Corporation:
Mark R. Hutchinson

Counsel for BellSouth
Telecommunications, LLC:
Cheryl Winn

Counsel for Time Warner Cable
Information Services (Kentucky),
LLC:
Michael J. Vetter, Sr.